COOPER v. BAY STATE GAS CO. et al.

(Circuit Court, S. D. New York. January 5, 1904.)

1. CORPORATIONS—STOCK—SALE—STATUTE OF FRAUDS.

Where defendants contracted to purchase all the stock of a corporation for $160,000, and $25,000 of this sum was paid, it being understood that the seller should hold the stock as collateral for the unpaid price, the contract was not within the statute of frauds.

2. SAME—LETTERS—MEMORANDUM.

Where an oral contract for the sale of corporate stock was confirmed by letters subsequently written between the parties which disclosed all the terms of the contract, such letters constituted a sufficient memorandum to satisfy the statute of frauds.

3. SAME—CONSTRUCTION—FORFEITURE.

A letter confirming an offer for the sale of stock required a payment of $25,000 in cash to be regarded as a forfeiture in case the transaction was not completed by payment of the balance within 90 days. The buyer replied that its attorney advised it that it was without power to pay any money as a forfeiture, but that it would execute a collateral note for the balance, the result of which would be the equivalent of the seller's suggestion of forfeiture; after which the provision for forfeiture was dropped, and on payment of the $25,000 the seller wrote the buyer acknowledging receipt of the amount as the first payment on the purchase, again reciting the terms of the sale. Held that, though the note was never delivered nor the stock transferred, there was a completed sale thereof, and not a mere option to purchase, with a forfeiture of the $25,000 in case the contract should not be completed.

At Law.

Parsons, Closson & McIlvaine, for plaintiff.

Stern & Rushmore, for defendants.

WHEELER, District Judge. The plaintiff is the surviving partner of the firm of Cooper & Hewitt. The defendant Pepper is the receiver of the defendant gas company. This action is for the balance of the price of the capital stock of the Trenton Water Power Company at $160,000, after deducting $25,000 paid. One defense is that the stock was not to "become the property of the said Bay State Gas Company of Delaware until all of said purchase price was paid, and that in the event of the failure of the said Bay State Gas Company of Delaware to pay all of said purchase price within the time named the first payment of $25,000 was to be retained by the said Abram S. Hewitt as his property, and accepted by him in full payment and liquidation for any damage which he might suffer by reason of the failure of the said Bay State Gas Company of Delaware to complete the said purchase price."

The contract was made between Hewitt and J. Edward Addicks, president of the gas company. There seems to have been some preliminary introduction of the contract in spoken words. Then it was carried on by letters and written communications. On August 12, 1899, Mr. Hewitt wrote to Mr. Addicks, president, thus:

"When you parted with me, it was understood that I was to write to you stating the decision in regard to the sale of the capital stock of the Trenton

---

¶ 2. See Frauds, Statute of, vol. 23, Cent. Dig. § 199.

Water Power Company. Yesterday, however, Mr. Cunningham and Mr. Roche called to say that you requested them to state that on Tuesday next you would mail me a check for $25,000 on account of the purchase money, $160,000, agreed upon as the price of the capital stock of the company, amounting to 1,000 shares of $100 each. I do not know whether they were authorized to make this statement; hence I have addressed this letter to you for the purpose of saying that I am willing to close the transaction, as stated by them, upon the receipt of $25,000 in cash, to be regarded as a forfeit in case the transaction is not completed by the payment of the balance of the purchase money within ninety days."

On August 14, 1899, the directors of the defendant company voted:

"President Addicks presented the subject of the purchase of the Trenton Water Power Company, with water rights of the Delaware river at Scudders Falls, above Trenton, New Jersey, with the canal and all appurtenances, together with one thousand (1,000) shares of the stock of said company, for the sum of one hundred and sixty thousand dollars ($160,000), in accordance with the letter of Mr. Abram S. Hewitt, which was presented and read to the board, twenty-five thousand dollars to be paid on account. * * * On motion, the purchase of same is directed to be made."

On August 14, 1899, Mr. Addicks wrote to Mr. Hewitt:

"I therefore have the honor to state that the board of directors of the Bay State Gas Company voted to purchase the entire capital stock of the Trenton Water Power Company for the sum of $160,000, the company being free from any indebtedness; the terms being $25,000 cash on account, and the balance, $135,000, within ninety days thereafter. * * * I therefore enclose you a draft, at sight, on Lawson, Weidenfeld & Co., of New York, for $25,000, and the company will execute a formal contract, or, if you desire, a collateral note, for the balance of the purchase money, payable within ninety days. Our attorney advises us that the company has no power to pay any money as a forfeit. The execution of a collateral note, however, would give you a prompt remedy in case of default, and the result would be equivalent to your suggestion of a forfeiture."

August 15, 1899, Mr. Hewitt wrote to Mr. Addicks:

"I am in receipt of your favor of the 14th inst., enclosing a draft upon Messrs. Lawson, Weidenfeld & Co. for $25,000, being the first payment on account of your purchase from me of the entire capital stock of the Trenton Water Power Co., which consists of 2,000 shares, of $50 each. par value, making $100,000 in all. This stock I have sold to you for $80 per share, amounting to $160,000 for the entire capital stock. The remainder of the purchase money is to be paid to me, with interest, within ninety days from the date hereof. I suppose that the note of your company, payable with interest for that amount, and duly forwarded to me, will be a sufficient completion of the transaction; with the understanding, however, that I am to retain the whole of the capital stock in my possession as security for the payment of the note as or before maturity."

No note was delivered nor was any stock transferred. The alleged contract of sale arises from these letters. The $25,000 paid, if paid on the purchase price, would take the sale out of the statute of frauds, and the letters would be a sufficient memorandum in writing within the statute of frauds.

The question is now whether there was an agreement of sale of the stock by Cooper & Hewitt, and to take and pay for the same at the price mentioned by the gas company; the real question being whether there was a contract of purchase, and an agreement to pay the price, of which the balance of $135,000 would be due. That there was to

be a forfeiture of the $25,000 paid and no sale, if the balance was not paid, is negatived, by the letter concerning the vote, saying, "Our attorney advises us that the company has no power to pay any money as a forfeit," and by the dropping of the forfeiture idea out of the transaction after that. That there was a sale of the stock, as understood by the parties, appears from the acceptance in the next letter of August 15th, acknowledging the receipt of the $25,000, and saying: "This stock I have sold to you for $80 per share, amounting to $160,000 for the entire capital stock. The remainder of the purchase money is to be paid to me, with interest, within ninety days from the date hereof." There then became a debt from the company to Cooper & Hewitt of $135,000. The further statement in that letter, that "I am to retain the whole of the capital stock in my possession as security for the payment of the note as or before maturity," acquiesced in, shows that the capital stock was to remain in the hands of Cooper & Hewitt as security merely. This constituted a sale of the stock, and an agreement to pay the balance of the price, and for the holding of the stock as security. This relation was not at any time afterwards changed. The failure to deliver a note would not extinguish the debt, which has at all times remained. Neither would the want of delivery of the stock constitute failure of consideration for the retention of it as security would be mere holding of it for the gas company till payment should be made. The allusions to the transactions afterward show that this was the understanding. The defendant hung back about making payment, but did not repudiate the transaction. Mr. Addicks' letter of February 4, 1901, giving some reasons why they had not proceeded, says: "For this reason I am compelled to ask you to make a settlement of interest at 4% in the water power matter. * * * I know that technically you can charge 6%." This interest at 6 per cent., as it existed, and at 4 per cent., as proposed, shows that there was a debt to which it was applicable. When the matter of the debt is established, the plaintiff's case in this action is made out. The record title to the stock is immaterial as to this question. If the debt itself remains, the stock wherever it is held is for the security for the payment of the debt. This relation appears all the way through from the time it was established until now, and upon plain principles the plaintiff is entitled to a judgment for the balance due, with interest from the time when the contract was complete, which was when Hewitt accepted the omission of the forfeiture of the $25,000 in the transaction. The sum of $135,000 was then due.

Judgment for plaintiff for $135,000, with interest from August 15, 1899.